**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| BRIDGET SMITH, RENE TAN, VICTOR CASTANEDA, KRISADA LUEAMRUNG, DAMON LOVETT, WILLIAM CHALK, individually, on behalf of themselves and all others similarly situated;<br><br>      Plaintiffs,<br><br>   vs.<br><br>FLOOR AND DÉCOR OUTLETS OF AMERICA, INC., a Delaware corporation,<br><br>      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL** |

Plaintiffs Bridget Smith, Rene Tan, Victor Castaneda, Krisada Lueamrung, William Chalk, and Damon Lovett (collectively, "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant, FLOOR AND DÉCOR OUTLETS OF AMERICA, INC. ("Defendant" or "FND").  Plaintiffs hereby allege, on information and belief, except as to those allegations that pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

## INTRODUCTION

1.    Formaldehyde gas is known to cause cancer and also can cause asthma, chronic respiratory irritation and other ailments including skin and

breathing problems. People may be exposed to formaldehyde gas without knowing they are being exposed or that they are at risk.  The risk of the health problems is significantly greater for children.

2.      Since 1988, the State of California has recognized that formaldehyde is a carcinogen.  By 1992, the California Air Resources Board ("CARB") had formally listed formaldehyde as a contaminant with no safe level of exposure.

3.      Certain building materials, including laminate flooring, are processed in a way that introduces formaldehyde into the material during manufacturing. In response, the CARB has passed regulations limiting the amount of formaldehyde that may be present. Specifically, the California Code of Regulations, title 17, (which addresses public health), sections 93120 through 93120.12 are known as the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). The regulations apply to anyone who manufacturers, distributes, imports, sells, or supplies the designated materials in California.

4.      FND distributes, markets, and/or sells laminate wood flooring products in California that are subject to 17 California Code of Regulations sections 93120 through 93120.12.  FND also distributes, markets, and sells laminated wood flooring products in at least sixteen other states.

5.     Laminate wood flooring consists of a core of pressed wood [commonly referred to as medium-duty fiberboard ("MDF")], which is made up of wood particles bonded together with glue or resin, a high quality photographic image of wood, and a scratch resistant coating. Urea-formaldehyde resin is used to bond the wood particles together in the MDF core of laminate flooring.

6.     For at least the last four years, certain laminate wood flooring manufactured in China and distributed, sold, and/or controlled by FND (the "Formaldehyde Flooring") has contained formaldehyde in excess of the levels allowed under the CARB Regulations and sufficient to create a risk of personal injury to those exposed to it.  ("Design Defect").

7.     Because the Formaldehyde Flooring emits excessive formaldehyde levels, it violates applicable industry standards, CARB standards as well as FND's express representations and warranties and poses a risk to human health. Formaldehyde fumes from laminated flooring are a particular problem because the flooring is installed in houses, which are enclosed living spaces where people are subjected to exposure for long periods.

8.     Defendant's Formaldehyde Flooring, includes, but may not be limited to, all flooring with the FND vendor code "BBLF 3435", which includes, but is not limited to the following products:

3

1. Hampton Hickory HSB 12 mm (SKU 944101319);

2. Lapacho HS 12 mm (SKU 944101180);

3. Manor Oak 5 ½ inch 12 mm (SKU 944101335);

4. Midnight Moon EIR HSRW 12 mm (SKU 100040740);

5. Tuscan Olive 12 mm (SKU 944101179);

6. Braz Tigerwood 12 mm  (SKU 944101170);

7. Classic Oak 12 mm (SKU S44101331);

8. Wild Acacia 12 mm (SKU S44101178);

9. Carolina Hickory 12 mm (SKU 944101318);

10. 5 inch Brazillian Cherry HG 12 mm (SKU 944101293);

11. St. Tropez French  Bleed 12 mm (SKU 944101279);

12. Mahogany HS 12 mm (SKU 944101174);

13. Exotic Walnut HG 12 mm (SKU S44101194);

14. Expresso Oak HS 12 mm (SKU S44101182);

15. Ashland Hickory HSB 12 mm (SKU 944101320);

16. Brazilian Walnut HG 8 mm (SKU 944101193);

17. Cabreuva HS 12 mm (SKU 944101177);

18. 5 Inch Burlewood Bev 12 mm (SKU 944101293);

19. Monaco French Bleed 12 mm (SKU 944101280);

20. Silver Grey EIR HS 12 mm (SKU 100040757);

21. Java Bamboo Bev 12 mm (SKU 944101181);

22. Brazilian Cherry HG 12 mm (SKU 944101332); and

23. Dark Hickory HS 12.3 mm (SKU 100040765).

9.    The Formaldehyde Flooring distributed, marketed and sold by FND was manufactured and packaged in China.  FND supervised and controlled the entire distribution, marketing, and sales process, including the manufacturing and packaging activities that occurred in China.

10.    Plaintiffs seek damages and equitable relief based on common law theories of liability and the Magnuson-Moss Act on behalf of a national class or, alternatively, on behalf of state-specific classes in California, Georgia, Nevada, Tennessee and Texas.  In addition, Plaintiffs seek relief on behalf of subclasses in those five states which assert state statutory claims.  Each class requests that its members be furnished with safe laminate wood flooring products, or if no such product exists, a refund of the full amount paid for Formaldehyde Flooring and the cost to remove the Formaldehyde Flooring.  Additionally, each class requests equitable relief, an award of costs and attorneys' fees and expenses, and any other relief deemed necessary by the Court to redress the injuries caused by FND.

## PARTIES

11.     Plaintiff, Bridget Smith ("Smith"), is a citizen and resident of the State of Georgia. On February 25, 2014, Smith purchased 12.3 mm Classic Oak, SKU 100010396-6 from the Floor and Décor store in Atlanta, Georgia. Smith purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. Smith read and relied on the CARB labeling when purchasing the Formaldehyde Flooring. However, Smith's Formaldehyde Flooring contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not CARB compliant, Smith would not have purchased the Formaldehyde Flooring.

12.     Plaintiff, Rene Tan ("Tan"), is a citizen and resident of the State of California. On December 1, 2014, Tan purchased 33 units of 12.3 mm Lapacho HS, SKU 944101180 from the Floor and Décor store located in Santa Ana, California.  The labels on the packaging of the Formaldehyde Flooring purchased by Tan prominently stated, "California 93120 Compliant for formaldehyde Phase 2." Tan purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. Tan read and relied on the CARB labeling when purchasing the Formaldehyde Flooring. However, Tan's Formaldehyde Flooring

6

contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not CARB compliant, Tan would not have purchased the Formaldehyde Flooring.

13.     Plaintiff, Victor Castaneda ("Castaneda"), is a citizen and resident of the State of Nevada. On April 25, 2014, Castaneda purchased 52 units of 12.3 mm St. Tropez French, SKU 944101279 from the Floor and Décor store in Reno, Nevada. The labels on the packaging of the Formaldehyde Flooring purchased by Castaneda prominently stated, "CalCOMPliant 93120 Phase 2." Castaneda purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. Castaneda read and relied on the CARB labeling when purchasing the Formaldehyde Flooring. However, Castaneda's Formaldehyde Flooring contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not CARB compliant, Castaneda would not have purchased the Formaldehyde Flooring.

14.     Plaintiff, Krisada Lueamrung ("Lueamrung"), is a citizen and resident of the State of California. On June 14, 2014 and August 17, 2014, Lueamrung purchased 40 units and 30 units, respectively, of 12.3mm Dark Hickory HS, SKU

1000440765 from the Floor and Décor store located in Reno, Nevada. The labels on the packaging of the Formaldehyde Flooring purchased by Lueamrung prominently stated, "California 93120 Compliant for formaldehyde Phase 2." Lueamrung purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. Lueamrung read and relied on the CARB labeling when purchasing the Formaldehyde Flooring. However, Lueamrung's Formaldehyde Flooring contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not CARB compliant, Lueamrung would not have purchased the Formaldehyde Flooring.

15.     Plaintiff, Damon Lovett ("Lovett") is a citizen and resident of the State of Texas. On March 9 and 13, 2015, Lovett purchased 62 and 9 units, respectively, of 12.3mm Hapton Hickory HSB, SKU 944101319 from the Floor and Décor store in Dallas, Texas.  Lovett purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. However, Lovett's Formaldehyde Flooring contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not

CARB compliant, Lovett would not have purchased the Formaldehyde Flooring.

16.     Plaintiff, William Chalk ("Chalk") is a citizen and resident of the State of Tennessee. In May of 2014, Chalk purchased Expresso Oak HS 12mm, SKU 44101182 from a Floor and Décor store located in Tennessee. The labels on the packaging of the Formaldehyde Flooring purchased by Chalk prominently stated, "CalCOMPliant 93120 Compliant Phase 2."  Chalk purchased the flooring based, in part, on the fact that the Formaldehyde Flooring was CARB compliant. However, Chalk's Formaldehyde Flooring contains excessive levels of formaldehyde and does not and never did comply with CARB. If FND had not concealed material information about the Formaldehyde Flooring, and if it had been disclosed that it was not CARB compliant, Chalk would not have purchased the Formaldehyde Flooring.

17.     Defendant FLOOR AND DÉCOR OUTLETS OF AMERICA, INC. is a Delaware corporation with its headquarters and principal place of business at 2233 Lake Park Drive, Suite 4000, Smyrna, Georgia. Defendant conducts substantial business in the State of California and in the County of Los Angeles. FND may be served with process through its registered agent, CT Corporation Systems, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, members of the Class are citizens of a state different from the Defendant, and there are more than one hundred (100) members of the proposed Class.

19.     Venue lies in this District, pursuant to 28 U.S.C. §1391, because Plaintiff Smith resides in this Judicial District, and Defendant's principal place of business is in this Judicial District, and as a result, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. Venue is also proper in the Atlanta division because both a Plaintiff and FND reside in the Atlanta division.

## FACTUAL ALLEGATIONS

20.     FND is a rapidly growing specialty retailer of hard surface flooring and related accessories which sells its products through large warehouse-format stores.  According to Defendant's website, Floor & Décor presently has 58 retail stores in 17 states, specifically Arkansas, California, Colorado, Florida, Georgia, Illinois, Louisiana, Maryland, North Carolina, New Jersey, Nevada, Ohio,

Pennsylvania, Tennessee, Texas, Utah and Virginia.

21.    On or about March 1, 2015, the CBS News television show "60 Minutes" aired an investigative report exposing that Lumber Liquidators had sold Chinese-made laminate to customers in the United States which contained formaldehyde levels which violated the CARB Regulations.

22.    FND knew that its Formaldehyde Flooring was manufactured by the same mills in China exposed in the "60 Minutes" story as having manufactured and labeled laminate flooring for Lumber Liquidators as CARB compliant, when in fact such flooring contained dangerous levels of formaldehyde in excess of the CARB Regulations.

23.    FND had sold Formaldehyde Flooring which violated the CARB Regulations for years, and FND feared its actions would be exposed if consumers learned the identity of the Chinese mills which manufactured its Formaldehyde Flooring.

24.    FND was fearful that the same negative publicity and ensuing class action litigation which befell Lumber Liquidators following the "60 Minutes" story would impair FND's chances of a successful IPO and would be financially disastrous for the company if the public learned that FND's laminate flooring contained excessive levels of formaldehyde in violation of the CARB Regulations

11

and in contradiction to the representations made by FND on its product labeling that its Chinese-made laminate flooring was "California CARB Compliant."

25.    As a result, FND devised a scheme to conceal the identity of the Chinese mills which manufactured its Formaldehyde Flooring and to quickly remove all product labels claiming its Formaldehyde Flooring was "California CARB Complaint."

26.    Within days of the airing of the "60 Minutes" episode, FND management held a telephonic conference call with all of its store managers across the country and announced the following plan of action, which in fact was implemented:

1. All store managers were instructed to cover up and conceal the Vendor Code "BBLF 3425" and the words "California 93120 Compliant for Formaldehyde Phase 2" on all product labels affixed to store inventory of the Formaldehyde Flooring, by affixing new labels that did not contain the identification of the mill or contain the CARB compliance language;

2. Managers were told FND would ship new labels to each of its stores throughout the United States, which were to be placed directly over the original labels concealing the vendor code and the CARB compliance language on the Formaldehyde Flooring;

3. Store managers were authorized to approve overtime for sales associates to re-label the Formaldehyde Flooring inventory in the stores after-hours;

4. All Formaldehyde Flooring store inventory located in California was to be shipped to FND stores outside of California and to be heavily

discounted from approximately $1.99 – 2.49 per square foot down to approximately 50 cents per square foot to get rid of the Formaldehyde Flooring as quickly as possible;

5.   Commencing on or about March 25, 2015, FND began adding the words "May not meet California air STNDs" in small print at the bottom of the store receipt of each customer who purchased the Formaldehyde Flooring with the new labels.

27.   This plan was carried out by FND to conceal the defective nature of its flooring from potential customers and prevent the customers who had previously purchased the flooring from discovering that it was made at the same factories used by Lumber Liquidators, as exposed in the "60 Minutes" television show.

28.   Despite the fact that the Formaldehyde Flooring fails to meet CARB requirements for formaldehyde emissions, Defendant has made representations to the contrary on the product packaging for the Formaldehyde Flooring.

29.   At all times relevant to this action, Defendant has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly concealed, omitted or failed to disclose to Plaintiffs, Class Members and consumers the unlawful levels of formaldehyde emissions from its Formaldehyde Flooring.

30.   Plaintiffs have suffered injury in fact and loss of money or property, including the amount they paid for Formaldehyde Flooring, the cost to remove the

flooring, and the cost of replacing the flooring with a safe product.

## CLASS ALLEGATIONS

32.    This action may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23.

33.    <u>Class Definition</u>: Plaintiffs seek to represent a class composed of all persons in the United States who purchased Formaldehyde Flooring from the time of its introduction in the marketplace through and including the date of class notice (the "national class").  The national class asserts claims under the common law and the Magnuson-Moss Act.   Alternatively, if the national class is not certified, Plaintiffs request that classes asserting these claims be certified in California, Georgia, Nevada, Texas, and Tennessee ("the alternative state classes").

34.    In addition to the national and alternative state classes described in the preceding paragraph, Plaintiffs assert claims under state statutes on behalf of subclasses in California, Georgia, Nevada, Texas and Tennessee (the "state statutory subclasses").  The proposed national class, alternative state classes, and the state statutory subclasses are collectively referred to in this complaint as the "Class."

35.    Those excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that distribute or sell

14

Formaldehyde Flooring, the Judge(s) assigned to this case, and the attorneys of record in this case.

36.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any of the classes should be expanded, limited, or otherwise modified.

37.    The proposed classes meets all of the requirements to be certified under Rule 23, including the four criteria of Rule 23(a) and the criteria of Rule 23(b)(3).

<u>**Rule 23(a)**</u>

38.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members of the Class is impractical under the circumstances of this case.  While the exact number of members of the Class is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the national class has tens of thousands of members and each of the state classes and subclasses have thousands of members.

39.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of the proposed classes. Plaintiffs and all class members have been injured by the same wrongful practices of Defendant.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories.

15

40.   <u>Commonality</u>:   There are numerous common issues of law and fact which include, but are not limited to, the following:

a. Whether Defendant exercised reasonable care in testing its Formaldehyde Flooring prior to its release for commercial sale;

b. Whether Defendant's Formaldehyde Flooring is defective when used as directed, intended or in a reasonably foreseeable manner;

c. Whether feasible alternative safer formulations of the Formaldehyde Flooring were available;

d. Whether Defendant's Formaldehyde Flooring was fit for its intended purpose;

e. Whether Defendant has breached the implied warranty of fitness for a particular purpose;

f. Whether Defendant has breached the implied warranty of merchantability;

g. Whether Defendant has acted negligently;

h. Whether Defendant knew that the Formaldehyde Flooring was, and is, materially defective;

i. Whether Defendant omitted and concealed material facts from its communications and disclosures to Plaintiffs regarding the design defects inherent in the Formaldehyde Flooring;

j. Whether Defendant breached its express warranties;

k. Whether Defendant failed to disclose that the Formaldehyde Flooring did not comply with the CARB Regulations;

l.  Whether Defendant intentionally concealed or omitted the fact the Formaldehyde Flooring was not CARB compliant;

m. Whether Defendant knew or should have known that the Formaldehyde Flooring was not CARB compliant;

n.  Whether Defendant is strictly liable to Plaintiffs and the Class;

o.  Whether Defendant failed to warn Plaintiffs and the Class;

p.  Whether Defendant has violated the UCL;

q.  Whether Defendant has violated the CLRA;

r.  Whether Defendant committed unfair or deceptive business practices;

s.  Whether Defendant has received funds from Plaintiffs and Class Members that it unjustly received;

t.  Whether Plaintiffs and proposed Class Members have been harmed and the proper measure of relief;

u.  Whether Plaintiffs and proposed Class Members are entitled to an award of punitive damages, attorneys' fees and expenses against Defendant; and

v.  Whether, as a result of Defendant's misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

41.   Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other class members.  Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of all other Class

Members.  Plaintiffs have retained attorneys experienced in consumer class actions

and complex litigation as counsel.

### Rule 23(b)(3)

42.    Predominance:  The common issues of law and fact predominate over

any individual issues.

43.    Superiority:   A class action is the superior method of adjudication

because, among other reasons:

   a.  The individual amounts of damages involved, while not insubstantial,
       are such that individual actions or other individual remedies are
       impracticable and litigating individual actions would be too costly;

   b.  If each Class Member were required to file an individual lawsuit, the
       Defendant would necessarily gain an unconscionable advantage since
       it would be able to exploit and overwhelm the limited resources of
       each individual Class Member with vastly superior financial and legal
       resources;

   c.  The costs of individual suits could unreasonably consume the amounts
       that would be recovered;

   d.  Given the size of individual proposed class member's claims and the
       expense of litigating those claims, few, if any, proposed Class
       Members could afford to or would seek legal redress individually for
       the wrongs Defendant committed against them and, absent proposed
       Class Members, have no substantial interest in individually
       controlling the prosecution of individual actions;

   e.  This action will promote an orderly and expeditious administration
       and adjudication of the proposed class claims, and economies of time,
       effort and resources will be fostered and uniformity of decisions will
       be insured;

f.  Without a class action, proposed Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct;

g.  Proof of a common business practice or factual pattern which Plaintiffs experienced is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the causes of action alleged; and

h.  Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

44.     There are no unusual management difficulties posed by this litigation that would preclude its maintenance as a class action.   To the contrary, concentrating all of the claims in a single forum would provide substantial efficiencies and economies of scale.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Brought by the National and Alternative State Classes)**

45.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

46.     FND warranted that its flooring was free of defects when it sold those products to Plaintiffs and the members of the Class as described in this Complaint.

47.     Defendant further represented that its flooring products complied with

CARB formaldehyde standards and all applicable laws and regulations.

48.     These representations became the basis of the bargain when Plaintiffs and the Class Members purchased the Formaldehyde Flooring.

49.     Plaintiffs and Class Members relied on FND's express warranties and representations and would not have purchased the Formaldehyde Flooring (or the homes in which they were installed) if it had been disclosed that the Formaldehyde Flooring did not conform to FND's express representations and warranties.

50.     FND breached their warranties by:

   a.   Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

   b.   Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

   c.   Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

51.     Plaintiffs and Class Members have complied with all conditions precedent and provided FND with adequate notice.

52.     FND was also on notice regarding the excessively high levels of formaldehyde in its flooring from the complaints and requests for refund it received from Class Members, Internet message boards and from published product reviews.

53.     FND has denied, failed to pay in full, or failed to respond to Plaintiffs'

and the Class Members' valid warranty claims.

54.     As a direct and proximate result of FND's misconduct, Plaintiffs and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale. Additionally, Plaintiffs and the other Class Members have either incurred or will incur economic damages at the point of repair in the form of the cost of repair and/or the cost of purchasing non-defective flooring to replace the FND flooring.

### SECOND CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES
**(Brought by the National and Alternative State Classes)**

55.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

56.     By placing its Formaldehyde Flooring in the stream of commerce, Defendant impliedly warranted that its Formaldehyde Flooring was reasonably safe for its intended use, i.e., to provide flooring without exposing consumers to excess levels of formaldehyde gas.

57.     Defendant's Formaldehyde Flooring is not merchantable.  In breach of the implied warranty of merchantability, Defendant's Formaldehyde Flooring emits unlawful amounts of Formaldehyde gas.

58.   Defendant's Formaldehyde Flooring was not reasonably safe for its intended use when it left Defendant's control and entered the market.

59.   The Formaldehyde Flooring defects were not open or obvious to consumers.

60.   Privity of contract exists between FND and Plaintiffs and the Class.

61.   Specifically, Plaintiffs and Class Members have had sufficient direct dealings with FND and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract.

62.   Plaintiffs and Class Members are also intended third-party beneficiaries of contracts, including express warranties, between FND and its dealers, franchisees, representatives, and agents.

63.   Furthermore, FND's advertisements were directed at Plaintiffs and Class Members, and FND's warranties were expressly written for the benefit of Plaintiffs and Class Members as end users. FND's authorized dealers, franchisees, representatives, and agents, on the other hand, were not intended to be the ultimate consumers, and have no rights under the warranty agreements provided by FND.

64.   FND is a designer, manufacturer and supplier of the Formaldehyde Flooring and for a number of years, marketed, warranted, distributed, and/or sold the Formaldehyde Flooring throughout the United States.

22

65.    FND manufactured and sold its Formaldehyde Flooring to Plaintiffs and the Class Members, and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

66.    FND's Formaldehyde Flooring was not of merchantable quality and not fit for intended use when it left the factory due to the defects in the flooring described in this Complaint.

67.    FND's Formaldehyde Flooring would not pass without objection in the trade under FND's product description.

68.    The numerous and serious defects described in this Complaint make the Formaldehyde Flooring unfit and inappropriate for its intended use.

69.    As a result, FND breached its implied warranties to Plaintiffs and Class Members by producing, manufacturing, distributing and selling to them a defective product that was unfit for its intended use and for a particular purpose.

70.    As a direct and proximate result of FND's breach of its implied warranties, Plaintiffs and Class Members have suffered actual and consequential damages.

**THIRD CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Brought by the National and Alternative State Classes)**

71.    Plaintiffs, on behalf of themselves and all others similarly situated,

adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

72.     Defendant advertised and/or marketed its Formaldehyde Flooring to be safe and of good quality free from defects.  Defendant also represented that the Formaldehyde Flooring would perform in its reasonably expected operation use for its full life and was CARB compliant.

73.     In order to cut costs, Defendant did not ensure that the Formaldehyde Flooring was CARB compliant.

74.     FND failed to disclose that its Formaldehyde Flooring was not CARB compliant and defective, as described above, and that the Design Defect posed a serious risk of personal injury.

75.     These facts were not known or reasonably knowable to Plaintiffs and the Class.

76.     Defendant knew of the Design Defect from its performance of standard testing prior to placing the Formaldehyde Flooring into the stream of commerce.

77.     Plaintiffs and the Class reasonably relied and continue to rely upon Defendant to sell laminate wood flooring that was not defective, did not pose an unreasonable risk of harm, and was CARB compliant as shown through their

purchases.

78.    Defendant knew or should have known that Plaintiffs and the Class relied upon Defendant to sell laminate wood flooring that was not defective and did not pose an unreasonable risk of harm.

79.    Defendant's knowledge that its Formaldehyde Flooring was defective combined with Defendant's knowledge that Plaintiffs and the Class relied or rely upon Defendant to communicate the true state of facts relating to its Formaldehyde Flooring creates a legal obligation on Defendant to disclose to Plaintiffs and the Class these facts.

80.    Defendant is in a superior position to know the truth about, and the nature of, the Formaldehyde Flooring.

81.    Defendant intended and intends to deceive Plaintiffs and the Class by failing to disclose that the Formaldehyde Flooring is defective and poses an unreasonable risk of harm to consumers.

82.    Defendant's failure to disclose the Design Defect and risk of harm was material. Plaintiffs and the Class would not have purchased the Formaldehyde Flooring had they known of the Design Defect and risk of harm, which is significant, recognizable, real, and demonstrable. Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury.

25

83.     Plaintiffs and the Class were harmed. As a proximate result of Defendant's conduct, Plaintiffs and the Class will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may suffer personal injury.   In addition, Plaintiffs and the Class Members have suffered damages, which include, but are not limited to, the cost to repair the Design Defect.

84.     FND's concealment was a substantial factor in causing that harm.

85.     The wrongful conduct of Defendant was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and/or in conscious disregard for the wellbeing of Plaintiffs and the Class along with other members of the public who may be personally injured by the excessive levels of formaldehyde gas emitted from the Formaldehyde Flooring.

86.     Defendant caused injury to the Plaintiffs and the Class, placing profits over safety. In so doing, Defendant acted willfully and in conscious disregard of the rights or safety of others and subjected, and continues to subject, Plaintiffs and the Class to cruel and unjust hardship.

### FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
**(Brought by the National and Alternative State Law Classes)**

87.     Plaintiffs, on behalf of themselves and all others similarly situated,

adopt and incorporate by reference all foregoing allegations as though fully set forth in this Complaint.

88.   FND made representations about the Formaldehyde Flooring to Plaintiffs, Class Members, and their agents or predecessors, as set forth in this Complaint.

89.   Those representations were false.

90.   When FND made the representations, it knew or should have known the representations were untrue or it had a disregard for whether the representations were true.

91.   FND knew that Plaintiffs, Class Members, and their agents or predecessors, were relying on the representations.

92.   In reliance upon the representations, Plaintiffs and Class Members purchased the Formaldehyde Flooring and installed it in their homes.

93.   As a direct and proximate result of FND's negligent misrepresentations, Plaintiffs and Class Members have been damaged as set forth in this Complaint.

94.   As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damage, in addition to costs, interest

27

and fees, including attorneys' fees, as allowed by law.

## FIFTHCAUSE OF ACTION
## NEGLIGENCE
**(Brought by the National and Alternative State Classes)**

95.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

96.   FND owed a duty to Plaintiffs and Class Members to use reasonable care to ensure that its products did not pose an unreasonable risk of personal injury and, in particular, to ensure that its laminated flooring did not contain excessive levels of formaldehyde.  FND's duty arose under the common law and by virtue of regulations restricting the levels of formaldehyde in its laminated flooring.

97.   FND breached its duty of care by distributing, marketing, and selling the Formaldehyde Flooring to Plaintiffs and Class Members without ensuring that the flooring did not contain excessive levels of formaldehyde and thus was negligent.  FND's negligent acts and omissions include, but are not limited to, failing to adequately test the flooring before its sale; failing to determine that the flooring coming from China was CARB compliant; and failing to adequately and appropriately supervise and monitor the manufacture of the flooring.

98.   As a direct and proximate result, Plaintiffs and Class Members were

injured as described in this Complaint

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Pleading in the Alternative)
### (Brought by the National and Alternative State Law Classes)

99.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

100.   Plaintiffs and Class Members conferred benefits on Defendant when they purchased the Formaldehyde Flooring.

101.   Defendant was aware of the benefits it received from Plaintiffs and Class Members.

102.   It would be unjust and inequitable for FND to retain the benefits derived from Class Members' purchases of the Formaldehyde Flooring because, among other reasons, the flooring contains excessive amounts of formaldehyde, is defective in design, and is not fit for its ordinary and intended use; FND acted intentionally or recklessly in conscious disregard of the interests of Plaintiffs; and FND concealed the truth about the flooring.

103.   Under the circumstances, if FND does not return the benefits it received from Plaintiffs and Class Members, FND will be unjustly enriched.

104.   Plaintiffs and the Class Members are entitled to restitution of,

disgorgement of, and/or the imposition of the constructive trust upon the benefits obtained by the Defendant from its deceptive, misleading, and unlawful conduct.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
**(Brought by the National and Alternative State Classes)**

105.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

106.   Plaintiffs and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

107.   FND is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

108.   FND flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

109.   FND's express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

110.   FND breached its warranties by:

    a.    Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

    b.    Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    c.    Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

111.   FND's breach of its express warranties deprived Plaintiffs and the other Class Members of the benefits of their bargains.

112.   As a direct and proximate result of FND's breaches of its written warranties, Plaintiffs and the other Class Members sustained damages in an amount to be determined at trial.

113.   FND's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)
### (Brought by Plaintiff Rene Tan individually and on behalf of the California Sub-Class)

114.  Plaintiffs, on behalf of themselves and all others similarly situated,

adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

115. The acts, omissions, and practices of Defendant as alleged herein constituted, and continue to constitute, unlawful and unfair business acts and practices within the meaning of Section 17200 *et seq*. of the California Business & Professions Code.  Plaintiffs have standing to bring this action under Business & Professions Code § 17200 because they have suffered injury in fact and have lost money because of Defendant's conduct.

116.    Defendant has engaged in "unlawful" business acts and practices by its violation of the statutes and regulations referenced above, including, but not limited to:  California Business & Professions Code § 17200 *et seq*.; California Business & Professions Code § 17500 *et seq*.; California Civil Code § 1750 *et seq*.; and California common law that prohibits fraudulent concealment and breaches of implied warranty.

117.    Defendant has also engaged in "unfair" business acts or practices in that the harm caused by Defendant's manufacture, sale, distribution, and or control of its Formaldehyde Flooring outweighs the utility of such conduct, and the conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, causes substantial injury to Plaintiffs and the Class, and

provides Defendant with an unfair competitive advantage over those companies that abide by the law.

118.   Defendant's actions described herein constitute fraud within the meaning of California Business and Professions Code § 17200 *et seq.* in that Defendant has failed to disclose that the Formaldehyde Flooring contains the Design Defect.   Defendant's failure to disclose the Design Defect was likely to mislead Plaintiffs and the Class into believing that the Formaldehyde Flooring was free from defect and safe to use.

119.   As a result of the conduct described above, Defendant has been and will be unjustly enriched at the expense of Plaintiffs and the Class.

120.   The aforementioned unlawful or unfair business acts or practices conducted by Defendant have been committed in the past and continue to this day. Defendant has failed to acknowledge the wrongful nature of its actions. Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiffs and the Class or provided full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendant as a result thereof, thereby depriving Plaintiffs and the Class of laminate wood flooring that does not have an unreasonable risk of harm for personal injury.

121.   Pursuant to the Business & Professions Code § 17203, Plaintiffs and

the Class seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiffs and the Class full restitution of all monies wrongfully acquired by Defendant by means of such "unlawful" and "unfair" conduct, plus interest and attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5, so as to restore any and all monies to Plaintiffs and the Class and the general public which were acquired and obtained by means of such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Defendant.  Plaintiffs and the Class additionally request that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such monies by Defendant.  Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500)
### (Brought by Plaintiff Rene Tan Individually and on Behalf of the California Sub-Class)

122.  Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

123.  California Business & Professions Code § 17500 prohibits various

34

deceptive practices in connection with the dissemination in any manner of representations that are likely to deceive members of the public to purchase products such as the Formaldehyde Flooring.

124.   Defendant caused advertisements for Formaldehyde Flooring to be placed on its website and on product packaging, among other sources, before the general public and knew or should have known that Formaldehyde Flooring did not conform to the advertisements' representations regarding the safety of the product and compliance with the CARB Regulations.

125.   As a result of the foregoing, Plaintiffs, and other Class Members, and consumers are entitled to injunctive and equitable relief and damages in an amount to be proven at trial.

### TENTH CAUSE OF ACTION
### VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)
**(Brought by Plaintiff Rene Tan Individually and on Behalf of the California Sub-Class)**

126.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

127.   This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*.  Plaintiffs are consumers as defined by

California Civil Code § 1761(d).  Defendant's Formaldehyde Flooring constitutes "goods" as defined by California Civil Code § 1761(a).  At all times relevant hereto, Defendant constituted a "person" as that term is defined in California Civil Code § 1761(a), and Plaintiffs' and Class Members' purchases of Formaldehyde Flooring constituted "transactions," as that term is defined in California Civil Code § 1761(b).

128.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by California Civil Code § 1770(a), in transactions with Plaintiffs and Class Members that were intended to result in or which actually resulted in the sale or lease of goods or services to consumers:

    a.    In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the Formaldehyde Flooring in question has characteristics, benefits or uses which it does not have;

    b.    In violation of California Civil Code § 1770(a)(7), Defendant has misrepresented that the Formaldehyde Flooring in question is of particular standard, quality and/or grade, when it is of another; and

    c.    In violation of California Civil Code § 1770(a)(9), Defendant advertised the Formaldehyde Flooring in question with the intent not to sell it as advertised or represented.

129.   Defendant has made uniform representations that its Formaldehyde

Flooring is a high-quality product that will perform as represented. These representations, as set forth above, were false, deceptive, and/or misleading and in violation of the CLRA.

130. Pursuant to California Civil Code § 1782, Plaintiffs will notify Defendant in writing by certified mail of the particular violations of California Civil Code § 1770 alleged herein, and have demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Plaintiffs sent this notice by certified mail, return receipt requested, to Defendant's principal place of business.

131. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days after receipt of the California Civil Code § 1782 notice, Plaintiffs will seek actual damages and punitive damages for violation of the Act. In addition, pursuant to California Civil Code § 1780(a)(2), Plaintiffs will be entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate California Civil Code § 1770.

132. Plaintiffs and the class will also be entitled to recover attorneys' fees, costs, expenses and disbursements pursuant to California Civil Code §§ 1780 and 1781.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT
### (Nev. Rev. Stat. §598.0903)
### (Brought by Plaintiffs Castaneda and Lueamrung Individually and on Behalf of the Nevada Sub-Class)

133.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

134.    The Defendant's actions and/or inactions with respect to the sale, promotion, and management of the Formaldehyde Flooring represent a violation of Nevada's Deceptive Trade Practices Act ("DTPA").

135.    FND knowingly made false representations and/or material omissions regarding the characteristics, quality, and benefits of the Formaldehyde Flooring while actively promoting and selling Formaldehyde Flooring to Plaintiffs and Class Members throughout Nevada and the United States.

136.    The Formaldehyde Flooring was represented to the general public as having a quality and standard that met or exceeded CARB standards.

137.    FND perpetuated violations of Nevada's DTPA by knowingly and purposely concealing information about the Formaldehyde Flooring while continuing to claim it was a high quality product.

138.    FND's deceptive acts and practices included the dissemination of

material information through television, print, and the internet that failed to disclose known defects inherent in the Formaldehyde Flooring.

139.   The Plaintiffs and other similarly situated class members could have purchased flooring from a different manufacturer that was not defective and met CARB standards.

140.   The totality of FND's deceptive practices and acts are a direct and proximate cause of economic harm against the Plaintiffs and similarly situated class members.

**TWELFTH CAUSE OF ACTION**
**VIOLATION OF GEORGIA STATUTES SECTIONS 10-1-370 *et seq.* and 10-1-390 *et seq.***
**(Brought By Plaintiff Smith Individually and on Behalf of the Georgia Sub-Class)**

141.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

142.   This action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by FND on behalf of Plaintiff and the Class Members.

143.   Defendant's actions and/or omissions as described herein violated O.C.G.A. §§10-1-370 *et seq.* and §§10-1-390 *et seq.*, which were enacted to

protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

144.   Specifically, Defendant knowingly misrepresented and intentionally omitted material information regarding its Formaldehyde Flooring by failing to disclose known risks.

145.   Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendant's Formaldehyde Flooring in violation of O.C.G.A. §§10-1-370 *et seq.* and §§10-1-390 *et seq.*

146.   Defendant violated O.C.G.A. §§10-1-370 *et seq.* and §§10-1-390 *et seq.,* by knowingly and falsely representing that Defendant's Formaldehyde Flooring was fit to be used for the purpose for which it was intended, when Defendant knew it was defective, unreliable, and unsafe and by other acts alleged herein.

147.   Defendant's violation of O.C.G.A. §§ 10-1-370 *et seq.,* and §§10-1-390 *et seq.* is continuing, with no indication that Defendant will cease.

148.   As a direct and proximate result of Defendant's violations of

40

O.C.G.A. §§ 10-1-370 *et seq.* and §§10-1-390 *et seq.***,** Plaintiffs and Class Members have suffered and will continue to suffer ascertainable damages and are entitled to all appropriate relief, including but not limited to damages, costs, and attorneys' fees.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(Brought By Plaintiff Chalk Individually, and on**
**Behalf of Tennessee Sub-Class)**

149.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

150.   FND committed violations of the Tennessee Consumer Protection Act, § 47-18-101 *et seq* ("TCPA").

151.   Plaintiffs are consumers as defined by the TCPA.

152.   The Formaldehyde Flooring is "good[s]" as defined by TCPA.

153.   FND sale of the Formaldehyde Flooring constitutes "trade," "commerce," or "consumer transaction" as defined in Tenn. Code Ann. § 47-18-103(a).

154.   FND's knowingly false representations as described herein regarding the quality of the Formaldehyde Flooring constitute violations of the TCPA.

155.   FND engaged in the unlawful practices set forth in this Complaint in

the sale of merchandise in trade or commerce of the Formaldehyde Flooring.

156.   FND engaged in the unlawful practices set forth in this Complaint in the advertisement of merchandise in trade or commerce of the Formaldehyde Flooring.

157.   FND knowingly made false representations and omitted material facts as defined by the TCPA which means actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception.

158.   Specifically, as discussed herein, FND knew or should have known it was making misrepresentations in its marketing and warranties that the Formaldehyde Flooring was not CARB compliant.

159.   Plaintiffs and members of the Class purchased the Formaldehyde Flooring for personal, family, or household purposes.

160.   Through their purchase of the Formaldehyde Flooring, Plaintiff and Class Members relied on FND's representations and omissions.

161.   Had Plaintiff, the Class Members, and their agents known of the defective nature of the Formaldehyde Flooring, they would not have purchased the Formaldehyde Flooring.

162.   The acts of FND, as described herein, constitute an unfair and deceptive trade practice in violation of the TCPA, Tenn. Code Ann. § 47-18-101 *et seq.*

163.   As a direct and proximate result of FND's wrongful acts, which were committed willfully and knowingly, Plaintiffs are entitled to a recovery of treble damages which includes the cost to remove and replace the Formaldehyde Flooring, the difference in value between the Formaldehyde Flooring as represented versus the value of the defective Formaldehyde Flooring, and any other compensatory or consequential damages.

**FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**(Tex. Bus. & Com. Code § 17.41 *et seq.*)**
**(Brought By Plaintiff Lovett Individually, and on Behalf of Texas Sub-Class)**

164.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

165.   In marketing, promoting and selling the Formaldehyde Flooring, FND engaged in deceptive trade practices in violation of O.C.G.A. § 10-1-371 *et seq.* when it represented that the Formaldehyde Flooring was CARB compliant, had characteristics, components, uses, benefits or qualities that it does not have, and

represented that the Formaldehyde Flooring is of a particular standard, quality or grade when it is of another.

166.   Plaintiffs have personally suffered harm as a result of purchasing flooring that was not merchantable.

167.   As a result of FND' violations of the Texas Deceptive Trade Practices Acts, Plaintiffs have been damaged and seek appropriate injunctive relief to remedy this misconduct, along with all other remedies or damages available under Tex. Bus. & Com. Code § 17.41 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other individuals similarly situated, request the following relief:

A. That the Court determine that this action may be maintained as a class action under Rule 23;

B. Actual and compensatory damages;

C. Punitive damages;

D. Declaratory and equitable relief;

E. Costs of suit;

F. Pre- and post-judgment interest;

G. Reasonable attorneys' fees, including fees and expenses under

O.C.G.A. §13-6-11 on the ground that Defendant has acted in bad faith, been stubbornly litigious, or caused Plaintiffs unnecessary trouble and expense; and

H. Such other relief as allowed by law the Court may find appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby request a jury trial on the claims so triable.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 10774
Doffermyre Shields Canfield & Knowles, LLC
1355 Peachtree Street, Suite 1900
Atlanta, GA 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

Daniel K. Bryson
Scott C. Harris
Whitfield Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: 919-600-5000
Email: dan@wbmllp.com
Email: scott@wbmllp.com

Robert R. Ahdoot
Bradley K. King
Ahdoot & Wolfson
1016 Palm Avenue
West Hollywood, California 90069
Phone: 310-474-9111
Email: rahdoot@ahdootwolfson.com
Email: bking@ahdootwolfson.com


Alexander "Trey" Robertson, IV
Mark J. Uyeno
Robertson & Associates, LLP
32121 Lindero Canyon Rd. Suite 200
Westlake Village, CA., 91361
Phone (818) 851-3850
E-mail: arobertson@arobertsonlaw.com
E-mail: muyeno@arobertsonlaw.com